UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| STANLEY CHANCE | : 3:03CV40 (JCH) |
| VS. | : |
| DAVID CUNDY, ET AL | : SEPTEMBER 29, 2003 |

## PLAINTIFFS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The following is the plaintiffs' opposition to the defendants' motions to dismiss and should in no way be construed as a withdrawal of his motion to strike.

Contrary to the defendants position there is more than enough evidence to show that David Cundy ("Cundy") conspired with Officer Kevin Well ("Wells"), Detective Peter Bravo ("Bravo") and Lieutenant Chris Lyddy ("Lyddy") of the Fairfield Police Department ("Police")[1]

Looking at the Fairfield Police Department Incident Report ("The Report"). It clearly show that the plaintiff, Stanley Chance ("Chance") had permission and consent to call the Cundy home on August 12, 2002:

"Nick gave Stanley his number."

The Report also clearly show that Chance did not contact the Cundy home for 5 days August 12, 2002 through August 16, 2002 when on August 16, 20002, Cundy went to his son employer and Chance's employer to complain about Chance calling his home with permission 5 days earlier and Cundy never told Chance not to contact his home.

---

[1] Any reference to Police should be construed to refer to all municipal defendants unless otherwise noted.

1

The report also clearly shows that Cundy was spreading false rumors that Chance was trying to molest his son in the Westport, Connecticut area where Chance worked and Chance tried to discuss this with Cundy:

> "David said that Stanley the call the house on 8-16-2002, twice, he [Cundy] said that he [Chance] also left a message on the voicemail for David to call him.
> He [Chance] said on the message that he wanted to talk to him [Cundy] because he heard that he [Cundy] was talking about him."

2 days latter on August 18, 2002 Cundy went to see Wells at the Fairfield Police Department to report that Chance was making harassing phone calls to his home.

Also on August 8, 2002 Wells called Chance at his home and left a message on Chances' home answering machine:

> "This is officer Wells of the Fairfield Police Department
> Could you call me as soon as possible"

On or about February 6, 2003 Cundy calls Lyddy and Bravo and falsely report to them that Chance "had been to his house, stalking him at his job, which is in Wilton, Connecticut and left a message on his machine.

Furthermore, looking at the Transcript of the Recording of the phone conversation it says:

> W(ells). "That's, that's as far as, that the extent of it I'm
> Going, you know, you are being warned not to
> call the house. that's what he [Cundy] wanted
> done and you know, there is no other uh, if it
> came down to it, I mean I don't know you from
> a hole in the wall, but if you kept calling there..."

It is well establish that "A civil conspiracy is a combination of two or more persons acting in concert to commit and unlawful act, or to commit a lawful act by

2

unlawful means" *Singer-v-Wadman*, 745 F.2d 606, certiorari denied 105 S.Ct 1396, 470 U.S. 1028, 84 L.Ed. 2d 785 (1985).

Entire theory of conspiracy is that two or more persons act together to effectuate unlawful purpose, and this assumes an agreement so to act, either by express consent or by inference; under such conspiratorial agreement, different members of the "conspiracy" agree to and do perform different acts, within his or her powers and abilities, to obtain common results *Sluys-v-Griebetz*, 842 F.Supp 764, affirmed 41 F.3d 1503, certiorari denied 115 S.Ct 1316, 514 U.S. 1005, 131 L.Ed, 2d 197 (1994)

Under Connecticut law, to prove action for damages caused by acts committed pursuant to formed conspiracy plaintiff must prove (1) Combination between two or more persons (2) to do criminal or unlawful or lawful acts by criminal or unlawful means (3) and to scheme in furtherance of objective (4) which acts results in damaged to plaintiff Northern *Tankers (Cyprus) LTD-v-Backstrom*, 767 F.Supp 1391 (D.Conn 1997)

To sustain conspiracy claim, plaintiff need show only that conspirator agreed on common purpose, and need not show that every conspirator conspired directly with every other member of the conspricy. *Borden-v-Spoor Behrins Campbell and Young*, 828 F.Supp 216 (S.D.N.Y 1993); an illicit agreement may be shown via circumstantial evidence…Proof of tacit, as opposed to explicit understanding is sufficient to show agreement and among the facts a fact finder must consider in inferring a conspiracy are the relationship of the parties, proximity in time and place of the act, and the duration of the activity…Further, to demonstrate a conspiracy plaintiff need not show that each conspirator agreed to every detail of the conspiracy but only that each agree on the essential nature of the plan *Id* at 225.

3

"Formal agreement is not required to establish conspiracy." *Mitland-Raliegh-Durham -v- Myers*, 807 F.Supp. 1025, 1026 (S.D.N.Y. 1992); "The very existence of a conspiracy must commonly be inferred after the fact from a series of acts, since there is usually no formal agreement or at least none susceptible of proof…The agreement is simply alleged and to prove it's existence the plaintiff offers evidence of the conspirators conduct, what they said and what they did and ask the jury to infer from this that the agreement has been established *Id at 1053*.

The following facts are taken from The Report, which clearly show that Chance had permission and consent to call the Cundy home on August 12, 2002.

"Nick gave Stanley his number"

The Report also show that Chance did not call the Cundy home in 5 days when on August 16, 2002, David Cundy spokes to his sons boss who told him that he would speak to Stanley [Chance] boss at Torno Lumber and tell him to tell Stanley not to call anymore.

When Cundy went to his son's boss on the 16th of August 2002, Chance has not call his home in 5 days and was not going too and Cundy never told Chance not to call his home anymore.

What David Cundy did were very complicated, devious and deceptive steps for someone who simply did not want someone to contact him or his son, especially in view of the fact that Chance had not called in 5 days and he never told Chance not to call.

The Report also shows that Cundy was spreading rumors in the Westport, Connecticut that Chance was trying to molest his son, which was not true.

> "David said that Stanley Chance then called
> the house again on August 16, 2002, twice,
> he said he also left a message on his voice
> mail, for David to call him. He [Chance]
> said on the message to David that he wanted
> to talk to him because he heard that he [Cundy]
> was talking about him."

The Report then goes on to show that 2 days latter on August 18, 2002 Cundy went to Wells and filed a harassment complaint and his son did not go with him.

Then on January 19, 2003 in retaliation for Chance filing this $50 Million dollar lawsuit against him he call up Chance on his cell phone and tell Chance "You're a dead man nigger"

On or about February 6, 2003 Cundy calls Lyddy and Bravo and tell them that Chance has been "been to his house, stalking him at his job, which is in Wilton, Connecticut, and left a message on his answering machine at work.

The Police freely admit that they information Cundy gave them was false but they were "conducting an investigation to satisfy themselves that what Cundy said was not true"

This is a weak argument, which has no basis in theory, application, law, logic, objective reasoning or truth.

It has been long established in the Circuit that "Arrestee's allegation s that no probable cause existed for arrest and that Police Officers, Police Chief, Deputy Chief and Mayor engaged in cover up of omission and misrepresentation in arrest warrant affidavit and refused to <u>investigate</u> arrestee's report of theft stated claim for conspiracy to deprive arretee of constitutional rights"<u>LoSaCCo –v- City of Middletown</u>, 745 F.Supp. 812, 813

*(D. Conn. 1990)*; "Where officer knew or should have known that information supplied was based on personnel grievance, he had duty to check the allegations for distortions, misconceptions or outright untruth" *Id at 816*

The Court should first look at the bottom of the Report which says "Disposition", the Court will notice that the box which says "Under Investigation" is not checked and if the Police were indeed conducting an investigation this box would have been checked.

Additionally, the First thing that any officer does when conducting an investigation into a known suspect, especially one he does not no is run a search for prior crimes, wants and warrants, whether the suspect is on probation or parole, whether he or she been in prison and what for and to get a profile of the person the person there dealing with, no cop want to go into a situation or have contact with a suspect without knowing what kind of person they are dealing with and the risk to there safety the situation posses and they way this is done is by running a search on the "National Crime Information Computer ("N.C.I.C"), this is standard operating procedure.

On the bottom of the Report, the Court will notice that the Police did not run a N.C.I.C check, additionally Wells clearly shows that he did not conduct a background check on Chance and that is established in the Transcript of the phone conversation between Wells and Chance on August 18, 2002.

Wells: "I don't know you from a hole in the wall"

For all Wells knew Chance got have been a suspect in a bank robbery, escaped from prison or even a suspected terrorist with link to al quida.

It is actions likes Wells which is why the World Trade Center is no longer there, the pentagon got hit and all those people are dead.

The Court is permitted and should ask the U.S. Marshals, who are all retired cops, because you can't be a marshal unless you have been in law enforcement, and they will confirm all this.

If Wells were conducting an investigation he should of asked Cundy the following questions: Why didn't you tell Stanley yourself not to call your house?

> your house 7 days ago when you let him to too your son?

> Why did you your son boss to get Stanley to stop calling? your house when he had not called in 5 days?

> Why did you go your son's boss at all?

> Where you talking about Stanley? If so what did you say?

> Why are you making this harassment complaint 2 days after the fact?

And Wells would have interviewed Nick Cuny, the son of David Candy, who "did not come to headquarters with his father", no objective cops is going to conduct an investigation into harassment and not interview the person who is being harassed.

If Lyddy and Bravo were conducting an investigation the question they should have and would have asked Cundy would have been:

> When was Chance at you house?

> Why didn't you call us when he was at his house?

> Was he walking or driving?

> What kind of car was he driving?

> What color was the car he was driving?

> What does he look like?

> When was he stalking you at your job in Wilton?

7

Why didn't you call the Wilton Police?

What did he say on your answering machine at work?

Can we get a copy of the tape?

If the Police would have asked the routine investigative questions of Cundy they would have known he was lying, which the freely admit now that he was and they would have been satisfied that Chance was not harassing Cundy or been to his house or stalking him at his job.

They claim that the Police wanted to be sure that Chance did not do what Cundy said he did is also without merit, why would an objectively reasonable Police office take they word of a convicted felon, who they don't know from a "hole in the whole in the wall" over Cundy, a affluent respectable citizen of Fairfield who they say his information was reliable, yet know they state it was false, yet they never question Cundy to Check his story, yet they question Chance and say "Okay were satisfied that you did not do what he said you did", which is the stupidest statement made yet.

What reasonable person would wait 5 days to complain about harassing phone call and the only person he complain to is somebody who can't do anything about it?

What reasonable personable person would wait 2 days after he received a phone call that in "his opinion" was harassing to go the Police?

What reasonable person who know that somebody is outside their house who isn't suppose to be they're going to wait days to call the Police?

What reasonable person who is being stalked at the job in Wilton is going to call the Fairfield police Department 30 miles away and not call the Wilton Police Department all?

8

What reasonable person who know that somebody is outside their house who isn't suppose to be they're going to wait days to call the Police?

What reasonable person who is being stalked at the job in Wilton is going to call the Fairfield police Department 30 miles away and not call the Wilton Police Department all?

Additionally if they had enough suspicion to believe that Chance was stalking Cundy at his job in Wilton to order Chance to come to Fairfield Police Headquarter, the first thing that they would have done would call the Wilton Police and altered them to be on the look out for Chance because he has been stalking Cundy and may come back to Cundy's office, this is standard operating procedure.

Well the plaintiff did call the office of Wilton Police Chief Randolph Mineo, (203 834-6260 and spoke to an officer and asked if " David Cundy had ever call them or filed a compliant that Stanley Chance was stalking him at his job and had they ever received any communication from the Fairfield Police Department about Stanley Chance stalking David Cundy at his job" and the plaintiff was told they "We cannot release information with regard to communiqué with specific Police Departments be we can tell you that we have never received a complaint with regard to you to Mr., Chance"[1].

In LoSaCCo which the defendant motion to dismiss was denied against members of the Middletown Police Department The Court (Honorable Alan H. Nevas) ruled that the plaintiff has stated claims Conspiracy, 4th Amendment violation and defamation.

It has also long been held in this Circuit that "The Fourth Amendment of course, does not by its terms proscribe false arrest; it proscribes "unreasonable seizure." Doe –v-

---

[1] The plaintiff gave the Witon Police Officer his Social Security number and date of birth which is how he searched for any complaints filed against Stanley Chance

9

*City of Bridgeport*, 198 F.R.D 325,336 (D.Conn. 2000). In this case which involved a 1983 action against the Bridgeport Police Department by user of the needle exchange program the Honorable Janet C. Hall granted a permanent injunction on the merits against the Bridgeport Police based on the likelihood on success in which the plaintiffs claim against the Bridgeport Police were that of harassment and threat of arrest.

The defendant claims that the plaintiff cannot be granted relief under the 4th Amendment because the plaintiff was never arrested, based on Judge Hall decision <u>Doe</u>, the plaintiff need not be arrested to state claims for which relief can be granted for violation of 4th Amendment right.

However there are too many question to the Police objectivity to there argument which would stand up to judicial scrutiny.

A fair reading of the defendant's memorandum, which they state the plaintiff was never arrested, would lead and objectively reasonably mined jurist to infer and believe that the Police were never intending to arrest the plaintiff.

Since the Police were never intending to arrest the plaintiff in the first place why did they undertake an investigation, which they're own Report leave to question?

The very word investigation implies searching or gathering information which to base an arrest on or at least information to bring to a judge to get a warrant to arrest

Contrary to Police representation they were obligated and duty bound to read the plaintiff his Miranda right before questioning him otherwise any (emphasis added) information they obtain is a violation of the plaintiff 5th Amendment rights against self incrimination and coercion.

Any information obtained during the course of this investigation would have been inadmissible, why would an objective police officer would risk throwing away all that investigative work to have it thrown out of court.

Additionally, why didn't Lyddy and Bravo simply ask Chance over the phone, the questions that they made him go down to Police Headquarters to answer to satisfy themselves that Chance had not did what Cundy said he did, a satisfaction they would have had if they investigated and checked the story of Cundy for "distortions, misconceptions or outright untruth' *LoSacco,* 745 F.Supp. 812 at 816 and where simply harassing Chance *Doe,* 198 F.R.D at 336.

If they were never intending to arrest Chance, what was the purpose of the investigation?

The defendant also claim that because Chance boss at Torno Lumber told him not to call Cundy this excuses their actions and shield them from liability, which is also ridiculous.

When Chance called the Cundy home, he was not at work and on his own time, what he does on his own time is his own business, If Lew Wallace had told Chance to do his [Wallace] laundry on his [Chance] time doe Chance got to do it? Hell no! And that still leaves the question why Cundy didn't tell Chance himself not to call?

When somebody's spreading rumors about you, you have a right to confront them, in cases like what Cundy did, spreading these vicious vile rumors that he is trying to molest his son, the person has every right to take his whole head off.

With regard to the recording of the telephone conversation between Chance and Wells.

11

The one thing that all the cases that the defendant cite is that Law Enforcement personal must have authorization to record or wiretap phone line witch must be obtained Pursuant to a warrant issued by a judge and they must be acting in conjunction with an investigation by the U.S. Attorney [Federal] of States Attorney [State] office.

Chance's home phone number at the time of this incident (203) 368-1918 was unlisted, a service which he a fee to the phone company for, Chance's reasonable expectation of privacy in his home is without question, he paid a fee to keep his phone number unlisted

*In Re: State Police Litigation*, 888 F.Supp. 1236 (D.Conn. 1995), which involved prisoners in the custody of the Connecticut State Police, the Honorable T.F. Gilroy Daly addressed and held that the monitoring, recording of prisoners phone calls violated the prisoner's 4th Amendment right's to unreasonable search and seizure and 5th Amendment right to sell incrimination, and this is what this case was all about.

Also in *Washington-v-Meachum*, 680 A.2d 262 (Conn.1996) which involved the tapping and monitoring of Prisoners phone call. Connecticut Superior Court Judge Honorable Jon Blue held that "prisoner's must be giving notice that their phone call are subjected to monitoring, and that there be a blip every 15 seconds. *Washington* at 269 n.10 note and uphold the procedural requirements an officer must adhere before he can record telephone calls and quotes Connecticut General Statute, Section 54-41b which state:

> Application for order Authorizing Interception
> "The Chief States Attorney or the states attorney
> for the judicial district in which the interception
> is to be conducted may make application to a panel
> of judges for an order authorizing the interception of
> any wire communication by investigative officers hav-

      ing responsibility for the investigation or officer as to
      which the application is made when such interception may
      provide evidence of the commission of offenses involving
      gambling, bribery violation of Sections 53-395 or 21a-277

  In addition, Authorization must be obtained under Federal Statues 18 U.S.C, Section 2516, which states:

    "(1) The Attorney General, Deputy Attorney General, or any
    Assistant Attorney General, any acting Assistant Attorney
    General, or any Deputy Assistant Attorney General may authorize an
    Application to a federal Judge of competent jurisdiction for, and such judgemay
    Grant in conformity with section 2618 of this chapter an order authorizing
    Or approving the interception of wire or oral communication by the
    Federal Bureau of Investigation, or Federal agency having responsibility
    for the investigation of the offense as to which the application is made.

  It is well established that "the purpose of restricting authorization power in this manner is to assure those accountable and identifiable persons actually review wiretaps request <u>U.S.-V- Nanfro,</u> *64 F.3d 98,100 (2nd Cir 1995).*

  Federal and Statues mandate that in order to record telephone calls, an application must be made to a judge(s) and they're specific crimes to which the Judge(s) will grant authorization and harassment is not one of them.

  The defendants do not dispute that they did not have authorization to record the phone conversation between Wells and Chance.

  The only police official who could legally claim that they were conducting routine business in recording phone conversations and not be subjected to liability are 911 operator.

  Citizens reasonable rights to privacy may not be subject to random or arbitrary intrusion merely at the whim of law enforcement" <u>State-v- Bolsvert</u>, *671 A.2d 834, 40 Conn. App. 420 Certification denied 674 A.2d 1333,237 Conn. 903 (1996).* This case

involved a traffic stop at a sobriety check point which the Connecticut State Appellate Court stated in it's opinion " ...[a] sufficient restraint on the defendants liberty is evident and implicate his right under Article 1 to be secure in his person and from unreasonable searches and seizure" *Id*.

Defendants reliance on *Gyadu-v Hartford INS Co.*, 197 F.3d 590,591 (2nd Cir. 1999) is without merit, In this case which was dismissed by the district court because the plaintiff Ben F. Gyadu "failed to point to any specific evidence of communication between the entities...Gyadu makes no specific allegation in support of his claim of conspiracy *Gyadu* at 591.

"In order to claim the existence of a conspiracy, plaintiff must allege facts indicating the existence a agreement between some or all of the defendants... "Nevertheless, the court has reversed allegation and found that the plaintiff have sufficiently states claim upon which relief can be granted under 42 U.S.C. Section 1981 and 1983...On a motion to dismiss we presume that general allegation embrace those specific facts that are necessary to the claim" *M.O.C.H.A. Society, Inc-v- City of Buffalo*, 199 F.Supp.2d 40, 45 (W.D.N.Y 2002).

Not only has Chance pointed to evidence of specific communication between the defendants Cundy and the Fairfield Police Department, the number tier of factual allegations shows that there was an express or implied agreement, if their was no communication between the defendants, none of what Chance alleges could have ever happened.

The defendant's reliance on <u>Ward-v-Housatonic Area Regional Transit Dist</u>, *154 F.Supp.2d 339 (D.Conn 2001)* also erroneous, this case involved a Bus passenger who brought a Section 1983 complaint against the bus company, the only reason Judge Hall rule that the plaintiff did not have a liberty interest was that he gave up the liberty interest when he stated he did not want a refund for the bus pass when it was offered to him from the bus company.

The is no doubt the plaintiff has a liberty interest in his freedom after doing 10 years in prison and currently on probation and Chance isn't going to say "sure take my freedom" after being locked up for 10 years.

In determining balance between public interest and individual 's right to personal security free from arbitrary interference by law officers, first part of inquiry is assessment of whether intrusion promotes legitimate government interest <u>U.S-v-Dunbar,</u> *470 F.Supp (D. Conn.) 704, Affirmed 610 F.2d 807 (1979)*

"In case of doubt, constitutional immunities from unreasonable search and self incrimination should be upheld" <u>U.S.-v- DiCorvo,</u> *37 F.2d 124 (D.Conn 1927)*

Under both Federal and State Constitution warrantees search is per se unreasonable" <u>State-v- Velesko,</u> *707 A.2d 286,47 Conn. App. 424 Certification granted in part 717 A.2d 3, 244 Conn 915, affirmed 728 A.2d 493,248, Conn (1998)*

Federal and State statute mandate to record conversations police have to get a warrant/authorization from a panel of Judges to do it, which the Fairfield Police clearly did not have.

Also Cundy is liable under 42 U.S.C., Section 1983 as a state actor because he acted with the Police, received significant aid and encouragement from the Police that his actions are fairly attributed to the Police

It is well established that a private person can be held liable under 42 U.S.C., Section 1983, In determining the question of fair attribution "...[t]he party charged with the deprivation must be a person who may fairly be said to be a state actor, ether because he is a state official, because he has acted together with or has obtained significant aid from state officials or because his conduct is other chargeable to the state" *Malesko-v- Correctional Servs. Corp.* 299 F.3d. (2nd Cir. 1995); *Luger-v- Edmonson Oil Co. Inc,* 457 U.S. 922,936-939 (1982)

Also "To demonstrate that alleged infringement of Federal Right Fairly attributable to the state because the state has insulated itself into position of interdependence with entity does not require civil rights to demonstrates state was involved in conduct" *Steven –v- New York Racing Ass'n, Inc.,* 665 F.Supp. 164,171 (E.D.N.Y 1987)

There is no doubt that David Cundy obtained and received significant aid from the Police, not only that, even though they knew what he said was false, in their Memorandum in Support of there Motion to Dismiss they continue to act together and aid Cundy in his defense by justifying what he did even thought in the same memorandum they acknowledge that what he told them was false, there is no way they can be separated.

The Police did what they did because of the false allegations by Cundy, if Cundy did not make those false allegation, the Police never would have done what they did and there is no doubt that they violated Chance rights, it's either none or all, it can't be both ways.

The defendant's further state that Chance could have simply told the Police, to get a warrant when Lyddy told ordered him to come to the Fairfield Police Department Headquarters under threat of arrest and that the plaintiff's going to Police Headquarter was voluntary.

Well Cundy could have simply told Chance not to contact him or his son, but he didn't.

Cundy could have not waited 5 days to complain about Chance talking to his son, but he didn't.

Cundy could have not spread rumor that Chance was trying to molest his son, but he didn't.

Cundy could have not lied and said Chance was at his house, stalking him at his job but he didn't.

The Police could have investigated these facts and they could have satisfied themselves that Chance had not done what Cundy said he did, but they didn't.

Chance could have beaten the sh-t out of Cundy but he didn't.

Would of, could of, should have, Yeah! Yeah! Yeah!