This is a motion to dismiss on which all allegations are accepted as true which counsel needs to be reminded of.

Chance claim is that his going to the Fairfield Police was under the threat of arrest, this is anything but voluntary.

Additionally, the defendants have the burden of proving that Chance gave voluntary consent See *Anobile-v-Pelligrino*, 303 F.3d. 107, 124 (2nd Cir. 2002); Also "officials claiming that a search was consensual has the burden of demonstrating that consent was given freely and voluntary, the defendants bears the burden of showing that the search was valid because it's fall within one of the exception of the warrant requirement...This principal exception includes searches on consent" *McCrardle-v-Haddad*, 131 F.3d. 43, 48 (2nd Cir. 1997); Also "A deprivation of liberty without "reasonable cause" is a section 1983 violation as to which the defendants bear the burden of proving reasonableness" *Ravsor-v-Port Authority of New York and New Jersey*, 768 F.2d 34,40 (2nd Cir. 1985); *Doe.*

This is an argument for a jury or Summary Judgment, not for a motion to dismiss as such the defendants argument is without merit.

"Cause of Actions are recognized under 1983 for malicious prosecution" *Sanders-v-English*, 950 F.2d 1152 (1992).

"To Find officer liable for malicious prosecution under 1983, jury had to find, inter alia, that officer acted with malice, primarily for purpose other than that of bringing offender to justice" *Lee –v-Edwards*, 101 F.3d 805 (D. Conn. 1996)

18

Special Damages:

The plaintiff, Stanley Chance has a Criminal Record in June 2002, Chance was giving his Public Service License with that Criminal Record.

In April 2003, Chance was denied his "S" endorsement on his Public Service License, which would allow Chance to transport kids, As being unqualified to hold an "S" endorsement.

The only thing that happened form 2002 through 2003 was that David Cundy and the Fairfield Police file this harassment complaint, which is public record and would have been discovered by the Department of Motor vehicle and would be taking into consideration when denying Chance his "s" endorsement.

There is no way there going to give a license to carry kids to somebody who is accused of harassing kids

Summary of the Facts:

What happened is this, all backed up and substantiated by the Fairfield Police Incident Report and the illegal tapped from conversation between Well and Chance.

On August 12, 2002, Chance with permission called the Cundy home.

After the conversation David Candy questioned his son Nick Cundy about who Chance was and it came out that Chance was Black, which David Cundy didn't like because he is a racist maggot ass bigot.

Nick Cundy had Chance's phone number as well as it being displayed on the Cundy caller I.D and could have called Chance back and told Chance not to call any more so why didn't he?

David Cundy is expecting a call back from Chance so that he can say that Chance is harassing him and that he told Chance the first time he called on the 12th of August, not to call there anymore and he wants to have Chance arrested.

David Cundy did not realize that Chance was not going to call anymore but after 5 days he is getting impatient, because he does not want his son associating with Black people.

So 5 days latter on August 16, 2002, after not hearing from Chance, he goes see his is sons boss at Great Cakes Bakery, tell him the bullcrap about Chance trying to molest his son and he ask Rick, the owner of Great Cakes Bakery and his sons boss to tell Chance's Boss to tell Chance not to call his house anymore.

Rick, the father of 2 and a person, is horrified that Chance is trying to molest his son, and agrees to do what David Cundy told him to do and he goes sees Chance's boss at Torno Lumber and tells him about David Cundy telling him that Chance is to molest his son.

Without realizing it and they probably still don't know, Cundy's son's boss and Chance's boss became co-conspirator in David Cundy blatant racial discrimination of Chance.

Why would any body go to the boss to stop socializing of their children when they are not working?

Both his sons boss and Chance's boss star talking to each other, other employees, customers about David Cundy saying that chance is trying to molest [Cundys] his son.

As a added bonus probably unknown to him, Chance's boss hired Chance who he know has been in prison for 10 years and has never conducted a background check on

Chance, However there is ample evidence showing that both Cundy and Well knew about Chance Criminal past, in the Transcript of the Telephone conversation between Wells and Chance, the Court will note that it is filled with information giving from the plaintiff employer about the plaintiff employment history and tenure there, information that no employer would give to a 3rd party unless that party convinces him that he has a reason to be concerned about the employee, like that employee being a possible Child molester, so common sense says that Lew Wallace, Chance employer at Torno Lumber would also tell Well and/or Cundy about Chance being in prison for 10 years.

Chance goes into Calise delicatessen for lunch and hears from a customer "so you're that nigger trying to molest that white bot, that kids father got it in for you"[1]

Chance gets off of work and call David Cundy and asks Cundy to call him to discuss the rumors that are being attributed to him to which he never returns Chance call.

Cundy is not expecting Chance to respond civilly, in his book black people are savages, animals and if what he said about Chance was to get a reaction, it was not to talk, it was to be one of violence and when Chance did react violently he could say that his son boss and Chance's boss can corroborate that Chance was trying to molest his son and Chance "was dissatisfied that he [Cundy] did not want him to have contact with him or his son"

Why didn't Cundy simply tell Chance not to call his house anymore? Why did he tell his son boss to tell Chances boss to tell Chance not to call him?

These are really some drastic, devious, scheming steps for someone to take to get someone who has not called in 5 days not to call anymore.

---

[1] This is not verbatim

For 2 days Cundy is scheming and plotting and he decides that he will have Chance arrested for harassment.

2 days latter on August 18, 2002, Cundy goes see Wells and tells Wells this load of crap about Chance trying to molest his son.

There is no one who is going to wait 2 days too report harassment, in 2 days you can be killed, this is commonsense.

Wells call Chance and say to Chance:

Wells: "What's going on?

Wells wants to know what's going on with Cundy saying that Chance is trying to molest his son, Look at the Transcript of the phone call, Wells is asking questions of Chance, the suspect to which he should have known "what is going on" if he had investigated.

Wells leave Chance with the warning:

"If you kept calling there I'm going to fuck up"[2]

7 month latter after Cundy is served by the U.S. Marshals service with a $50 million dollar racial discrimination lawsuit from Chance, In retaliation for Chance suing him he Call Lyddy and tell Lyddy's this crap that Chance is trying to molest his son and he had filed a complaint with Wells in April 2002 and now Chance had been to his house, stalking him at his job and left a message on his answering machine.

The reason he goes to Lieutenant Lyddy is because Wells did not arrest Chance like he wanted, so he calls a Lieiunant, somebody higher than a patrolman with power to arrest Chance, why else would he go the police in the first place if he didn't want Chance arrested? DUH!

22

Lyddy check's with Wells and pulls the Report on the previous complaint filed by Cundy and he orders Chance to the Fairfield Police Department Headquarters under threat of arrest.

He tell Bravo to conduct the interrogation of Chance, which he's question Chance about the lawsuit than when Chance has "who is this guy that you people just jump for him" Lyddy say that "he is a father concerned about his son" never bothering to question the fact that Chance had not had contact or communication with Cundy's son since August 12, 2002.

Look at the Transcript of the telephone call between Wells and Chance, Chance made the suggestion that he would be arrested after Wells made his threat.

Wells was not in or thinking in an objective state of mind, additionally if Chance was to be arrested if he called Cundy again after August 18, 2002, then why wasn't he arrested 7 months latter on February 6, 2003 when Cundy claimed that chance was harassing him.

Chance was watching Judge Greg Mathis on television the other day and a guy who was accused of being a racist came in front of him and Judge Mathis said something very interesting.

He told the guy I believe your prejudice, but you can't be a racist, you don't have the money to be a racist, a racist is someone with the power to influence and control the actions of others.

David Cundy is a racist, he used his affluence and statues in the Fairfield community to get the Fairfield Police to do what he wanted which was to discriminate against Chance, which answers the question why he did not go to the Wilton Polcie,

---

[2] The transcript and recording was provided by the defendant's without Chance asking for it

when he falsely claimed that Chance was stalking him at his job in Wilton, because he does not have any influence in Wilton.

David Cundy played the Fairfield Police for suckers the same was his Attorney; William Kelleher played Attorney Mark Perkins, Tom Murtha and his firm for suckers.

The Fairfield Police were not even thinking about Chance's constitutional right, all that was going trough their heads is that one of Fairfield's fine, rich citizens is saying that a black man is trying to molest his son.

They were not thinking objectivly, reasonably or logically a reasonable police officer would have question Cundy as to why he waited 8 days to come to the Police department, why he was talking about Chance, when was Chance at his house, stalking him at his job in Wilton, etc, etc. when conducting an investigation.

A reasonable police officer would have conducted a background check on Chance to see if Chance had record for child molestation, which he don't or a record at all.

A reasonable police office would have asked David Cundy why didn't he call the Wilton Police if Chance was stalking him at his job in Wilton, why are you calling us 30 miles away and/or at the very least notified the Wilton Police that chance was stalking David Cundy.

A reasonable police office would have asked David Cundy, why his Chance stalking you if he's trying to molest you son who is in private school (affluence) over 200 mile away.

David Cundy played the S—t out of the Fairfield Police, the same way attorney William Kelleher played attorney Mark Perkins and Tom Murtha

Kelleher told Perkins this same crap that Chance was trying to molest Cunmdy son and to file this Motion for Summary Judgment disguised as a Motion to Dismiss, as Chance has shown their Memorandums to a few layers who have told him that not only can these Attorney's and their firms be held liable for legal Malpractice but conspiracy to discriminate as well.

If you look at both of the defendant's memorandums of law, they both say that "the plaintiff seem dissatisfied that the defendant did not want him to concoct him or his son" which no where is this ridiculous assertion supported by and documentation.

Their memorandums are the same cases and they are trying to play on Judge Halls emotions and sympathy for David Cundys son by throwing her cases in her face and knowing just how busy she his, judge hall see her name and that the case was dismissed and don't bother to read or check the case. Like *ward, 154 F.Supp. 2d. 339* which concerned a bus pass, which has no parallel connection with someone being arrested

They also think that the chance of the Court actually checking the cases in their memorandum is slim, they are members of the Bar, licensed attorneys.

If the Court will notice, everything in the Police Department's brief is designed to defend and justify the action of David Cundy and illicit sympathy for him while nothing in the Cundy brief justifies the action of the Fairfield Police.

Kelleher want to get his clients case dismissed and leave the Police, Perkins and Murtha holding the bag and run.

The Plaintiff has stated claims for which relief can be granted from all defendants pursuant to 42 U.S.C., 1983 for violation of Chance's 1st Amendment right to Freedom of Speech, 4th Amendment Right against unreasonable search and seizure, 5th

Amendment rights against coercion and self incrimination, 14th Amendment rights for

violation of Due Process, Conspiracy to discriminate pursuant to 14 U.S.C, 1985, Failure

to prevent dissemination pursuant t 42 U.S.C., 1988

THE PLAINTIFF

Stanley Chance, PRO SE
99 Jetland Street
Bridgeport, CT. 06605
(203) 685-6038

## CERTIFICATION

I hereby certify that a copy of the forgoing was mailed on October 2, 2003 to:

Tom Mutha. Esq.                     Willaim Kellher
Mark Perkin                         Wiggins & Dana
Maher & Murtha                      400 Atlantic Strret
528 Clinton Avenue                  Stamford, CT. 06904
Brigeport, CT. 06605

# FIELD POLICE DEPARTMENT
f Road
CT 06430
4800

## INCIDENT REPORT

☐ Arrest Pending
☐ Se. Assault
☐ Have / Bias Crime
☐ Arson
☐ Town Claim Incident

FILE NUMBER: 02-25376

| BER 25376 | | | |
|---|---|---|---|
| REPORT 18-02 | SIGNAL 7 | INCIDENT DESCRIPTION Harrassing Phone Calls | |
| DISPATCHED 1150 | ON SCENE 1150 | LOCATION OF INCIDENT 1296 Old Academy Road | |
| OCCURRENCE OF CALL ☑ | OR | AT BETWEEN    HRS ON    &    HRS ON | MNI ☐ |

## INVOLVED PERSONS

| CLASSIFICATION CODES | A = Arrested | C = Complainant | D = Deceased | H = Homeowner | I = Involved Party | J = Juvenile |
|---|---|---|---|---|---|---|
| | K = Key holder | M = Missing | N = Neighbor | O = Other | S = Suspect | V = Victim | W = Witness |

| LAST NAME Cundy | FIRST NAME David | M.I. | ADDRESS 1296 Old Academy Road | TOWN / CITY Fairfield, CT | STATE | HOME PHONE 259-5116 |
|---|---|---|---|---|---|---|
| DATE OF BIRTH 03-18-52 | RACE W | SEX M | OCCUPATION / TITLE | BUSINESS NAME AND ADDRESS | | WORK PHONE & EXTENSION 761-1412 |
| OPERATOR'S LICENSE | | SOCIAL SECURITY NUMBER | HEIGHT    WEIGHT    HAIR    EYES    COMMENTS | | | |
| YEAR & MAKE | MODEL & TYPE | COLOR    VIN | | STATE & REG. | EXP. DATE | |
| CHARGES | | | | | COURT DATE | |

| LAST NAME Cundy | FIRST NAME Nick | M.I. | ADDRESS 1296 Old Academy Road | TOWN / CITY Fairfield, CT | STATE | HOME PHONE 259-5116 |
|---|---|---|---|---|---|---|
| DATE OF BIRTH 14-01-85 | RACE W | SEX M | OCCUPATION / TITLE | BUSINESS NAME AND ADDRESS | | WORK PHONE & EXTENSION |
| OPERATOR'S LICENSE | | SOCIAL SECURITY NUMBER | HEIGHT    WEIGHT    HAIR    EYES    COMMENTS | | | |
| YEAR & MAKE | MODEL & TYPE | COLOR    VIN | | STATE & REG. | EXP. DATE | |
| CHARGES | | | | | COURT DATE | |

| LAST NAME nance | FIRST NAME Stanley | M.I. | ADDRESS 119 Gem Ave | TOWN / CITY Bridgeport, CT | STATE | HOME PHONE 368-1918 |
|---|---|---|---|---|---|---|
| DATE OF BIRTH 1-10-68 | RACE B | SEX M | OCCUPATION / TITLE | BUSINESS NAME AND ADDRESS | | WORK PHONE & EXTENSION |
| OPERATOR'S LICENSE | | SOCIAL SECURITY NUMBER | HEIGHT    WEIGHT    HAIR    EYES    COMMENTS | | | |
| YEAR & MAKE | MODEL & TYPE | COLOR    VIN | | STATE & REG. | EXP. DATE | |
| CHARGES | | | | | COURT DATE | |

| LAST NAME | FIRST NAME | M.I. | ADDRESS | TOWN / CITY | STATE | HOME PHONE |
|---|---|---|---|---|---|---|
| DATE OF BIRTH | RACE | SEX | OCCUPATION / TITLE | BUSINESS NAME AND ADDRESS | | WORK PHONE & EXTENSION |
| OPERATOR'S LICENSE | | SOCIAL SECURITY NUMBER | HEIGHT    WEIGHT    HAIR    EYES    COMMENTS | | | |
| YEAR & MAKE | MODEL & TYPE | COLOR    VIN | | STATE & REG. | EXP. DATE | |
| CHARGES | | | | | COURT DATE | |

| LAST NAME | FIRST NAME | M.I. | ADDRESS | TOWN / CITY | STATE | HOME PHONE |
|---|---|---|---|---|---|---|
| DATE OF BIRTH | RACE | SEX | OCCUPATION / TITLE | BUSINESS NAME AND ADDRESS | | WORK PHONE & EXTENSION |
| OPERATOR'S LICENSE | | SOCIAL SECURITY NUMBER | HEIGHT    WEIGHT    HAIR    EYES    COMMENTS | | | |
| YEAR & MAKE | MODEL & TYPE | COLOR    VIN | | STATE & REG. | EXP. DATE | |
| CHARGES | | | | | COURT DATE | |

For additional involved persons refer to Involved Person Supplement

## COLLECTION

| LARCENY | | BURGLARY | ROBBERY |
|---|---|---|---|
| PTED | ☐ ATTEMPTED | ☐ BICYCLES | ☐ FORCIBLE    ☐ RESIDENTIAL: DAY | ☐ FIREARM |
| M | ☐ POCKET PICKING | ☐ FROM BUILDING | ☐ NO FORCE    ☐ RESIDENTIAL: NIGHT | ☐ KNIFE |
| | ☐ PURSE SNATCHING | ☐ COIN OPER. MACHINE | ☐ ATTEMPTED    ☐ RESIDENTIAL: UNK. | ☐ OTHER WEAPON |
| | ☐ SHOPLIFTING | ☐ BOATS & ACCESS. | ☐ NON-RESIDENTIAL: DAY | ☐ STRONG ARM |
| VATED | ☐ THEFT FROM M.V. | ☐ OTHER | ☐ NON-RESIDENTIAL: NIGHT | ☐ ATTEMPTED |
| GGRAVATED | ☐ M.V. PARTS & ACCESSORIES | | ☐ NON-RESIDENTIAL: UNK. | |

| QUANTITY | TYPE | ITEM | PROPERTY DESCRIPTION INCLUDE MAKE, MODEL, TYPE, COLOR, ETC. | SERIAL NUMBER | VALUE |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

For additional property refer to Property Supplement

**NARRATIVE**

David came to police headquarters to report harassing phone calls. David stated that his son Nick works at Great Cakes in Westport. David said that met Stanley, who works at Tarno Lumber, at his workplace. The two businesses are to each other in Westport. Nick and Stanley then began talking to each other, and ually Nick gave Stanley his phone number. David said that Stanley called his home on 08-12-02. David said that he doesn't want Stanley to call his home any more, with Nick not wanting him to call the house. David said that he spoke to Nick's boss reat Cakes, who said that he would speak to Stanley's boss at Tarno Lumber, to have ot call the house anymore.

David said that Stanley then called the house again on 08-16-02, twice. He said that left a message on the voice mail, for David to call him. He said on the message to d that he wanted to talk to him because he heard that he was talking about him.

David requests that I warn Stanley not to call his house anymore.

I called Stanley's home and left a message on the answering machine for him to call me. avid said that his son Nick quit his job in Westport. Nick did not come to vorks with his father.

**DISPOSITION**                                              ASSISTED BY:

| | | NCIC | |
|---|---|---|---|
| AMBULANCE TO: _____ | ☐ NOTIFY _____ | ☐ POLICE INFORMATION | |
| AREA ALL QUIET | ☐ _____ NOTIFIED | ☐ SECURED BY PATROL | |
| ASSISTANCE RENDERED | | ☐ SETTLED | |
| CHECKS OK | | ☑ SPOKE TO COMPLAINANT | |
| VIL MATTER | ☐ _____ RESPONDED | | |
| ONDITION CORRECTED | | ☐ TOWED BY _____ | |
| GALLY PARKED/REGISTERED | ☐ NOTIFICATION MADE | ☐ UNABLE TO LOCATE / GOA | |
| OTE LEFT/UNABLE TO | | ☐ UNDER INVESTIGATION | |
| ONTACT | ☐ _____ PARKING TAG(S) ISSUED | ☐ WARNED / SENT ON WAY | |

NCIC:
1 — ☐ ENTRY ☐ LOCATE ☐ CANCEL — OCA #: _____ CT MESS #: _____
2 — ☐ ENTRY ☐ LOCATE ☐ CANCEL — OCA #: _____ CT MESS #: _____

| OFFICER REPORTING | BADGE NUMBER | PATROL AREA | IN SERVICE TIME | COPIES TO: | SPECIAL SERVICES | REVIEWED BY SERGEANT |
|---|---|---|---|---|---|---|
| *een Keenell* | 76 | R-2 | 1225 | ☐ DETECTIVE DIVISION ☐ YOUTH BUREAU ☐ ADMINISTRATION | FOLLOW UP PATROL OTHER: | REVIEWED BY SHIFT CDR. |

POLICE DEPARTMENT INCIDENT REPORT                    PAGE 2                    FPD - 3 revised 06/2001

Statement For:   STANLEY D CHANCE
Account Number:   275997925

Customer Service Number   1-800-937-8997

Feb 10, 2003

## ...AL AIRTIME, LONG DISTANCE AND INTERNATIONAL CHARGES - (Continued)

| Call Destination | Time | Number Called | Call Type | Minutes | Airtime | Toll | Additional | |
|---|---|---|---|---|---|---|---|---|
| ...sory Asst | ...M | | | | | | S | 0.99 |
| ...COMING | 11:04 AM | 203 258 5116 | | S | C | C | S | |

Call Waiting (B) Call Forward (C) Conference Call (D) Text Message (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
all

# State of Connecticut
## Department of Motor Vehicles
60 STATE STREET, WETHERSFIELD, CONNECTICUT 06161-4005
ADMINISTRATIVE HEARINGS SECTION - TELEPHONE (860) 263-5200
On the Web at HTTP://DMVCT.ORG

Cert# 1

Stanley D Chance
119 Gem Ave.
Bridgeport,, CT   06606

6/27/02

Case #:   CVS-2002-177

Operator #   CT137665294

RE:  Hearing, June 27, 2002, WETHERSFIELD

Dear Mr. Chance

As a result of the above-referenced hearing held in WETHERSFIELD, at which you were present, the following Findings of Fact and Conclusions of Law are here by made:

## FINDINGS OF FACT

1. Stanley D. Chance (Respondent) holds a Connecticut Drivers License (Class 2) with a B Restriction and applied for a P Endorsement and T Restriction.

2. The Endorsement and Restriction of the Respondent were subject to denial because he had been convicted of Assault on an Officer and Arson 1 on November 17, 1993, three (3) counts of Burglary 3 on November 21, 1991, Burglary 3 on June 5, 1991, Breach of Peace on April 25, 1991 and a history of minor crimes from the 1980's.

3. The Respondent requested a hearing regarding the denial of his Restriction and Endorsement.

4. The Respondent appeared at the above hearing and testified that the assault charge was a result of throwing water on a corrections officer and the arson charge was from playing with matches.

5. He further testified that he wants to start a livery service that would specialize in bringing people to see family member who are incarcerated.

6. He provided three (3) favorable letters of reference at the hearing.

## CONCLUSIONS OF LAW

That the endorsement and restriction of the Respondent are subject to denial in accordance with Section 14-44-2 of the Connecticut regulations, but consideration will be given to the evidence and testimony.

## BASED UPON THE ABOVE FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS ORDERED:

The Respondent's endorsement and restriction shall be approved.

Dated at Wethersfield, Connecticut this 27th day of June, 2002.

Mark P Gutis
Hearing Officer

# State of Connecticut
## Department of Motor Vehicles
60 STATE STREET, WETHERSFIELD, CONNECTICUT 06161-4005
ADMINISTRATIVE HEARINGS SECTION - TELEPHONE (860) 263-5203
*On The Web at HTTP://DMVCT.ORG*

Cert#    1

Stanley D Chance
99 Jetland Street
Bridgeport, CT    06605

5/22/03

Case #:   CVS-2003-57

Operator #   CT137665294

RE: Hearing, April 30, 2003, WETHERSFIELD

Dear Mr. Chance

As a result of the above-referenced hearing held in WETHERSFIELD, at which you were present, the following Findings of Fact and Conclusions of Law are here by made:

## FINDINGS OF FACT

1.   Stanley Chance (Respondent) holds a class 2 license in the State of Connecticut with a P endorsement and a T restriction. On February 19, 2003, he applied for an S endorsement.

2.   Based upon his application, the DMV conducted a background investigation, and determined that the Respondent had a criminal record. On March 17, 2003, the Department of Motor Vehicles sent the Respondent a letter notifying him of a denial of his S endorsement. The Respondent requested the captioned hearing, and was notified thereof by bulk certified mail at his address of record. The hearing notice indicates that the hearing would determine whether the Respondent would be qualified to hold a public service license. The Respondent appeared at the hearing.

3.   The Department of Motor Vehicles presented the Respondent's criminal record and a previous hearing decision at the captioned hearing. The previous hearing was held based upon the same criminal record as the captioned hearing. However, the decision was for the Respondent's P endorsement and T restriction, which were granted. The Respondent's criminal record is extensive, including his most recent convictions for assault on an officer and arson 1 in 1993. The Respondent was released from prison in March 2001 after being incarcerated for the past 10 years. The Respondent testified that the arson 1 charge was for burning a mattress in prison. The Respondent is currently using his P endorsement and T restriction driving for Curtin Transportation.

## CONCLUSIONS OF LAW

Pursuant to section 14-44-2 of the State of Connecticut Motor Vehicle Regulations, the Respondent is unqualified to hold an S endorsement due to his lengthy and serious criminal record.

## BASED UPON THE ABOVE FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS ORDERED:

The Respondent's S endorsement is denied, and the right to reapply shall remain suspended until May 2008.

Dated at Wethersfield, Connecticut this 22nd day of May, 2003.

SHARON MADDEN
Hearing Officer



IRS Department of the Treasury Internal Revenue Service
CINCINNATI  OH  45999-0046

In reply refer to: 0223703740
June 05, 2003    LTR 696C
75-3020976    000000 00 000
                              07339

FREEDOM FORCE CORPORATION INC
% STANLEY CHANCE
119 GEM AVE
BRIDGEPORT  CT  06606-5419193

Taxpayer Identification Number:  75-3020976

Dear Taxpayer:

This is in response to your correspondence dated Apr. 01, 2003,
informing us of your wish to cancel your employer identification
number.  Since you have not conducted any business activities, we
have removed your name from our mailing list for business tax
returns and your account has been closed.

Our records indicate you have discontinued doing business as a
corporation.

Please destroy any federal tax deposit coupons you may receive in
the future for your discontinued business.

If you have any questions, please call us toll free at 1-800-829-0115.

If you prefer, you may write to us at the address shown at the top
of the first page of this letter.

Whenever you write, please include this letter and, in the spaces
below, give us your telephone number with the hours we can reach you.
Keep a copy of this letter for your records.

Telephone Number (    )_____ Hours_____