UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STANLEY CHANCE                      :
        Plaintiff                   :
                                    :       CIVIL ACTION NO.
v.                                  :       3-03-cv-40 (JCH)
                                    :
DAVID CUNDY, ET AL.                 :
        Defendants                  :       JUNE 25, 2004

**RULING RE: MOTIONS TO DISMISS**
**[DKT. NOS. 58 AND 60]**

## I.    INTRODUCTION

The plaintiff, Stanley Chance ("Chance"), filed this action, pro se, on September

6, 2002, against David Cundy ("Cundy") and Eetitila Cundy [Dkt. No. 2]. As of right,

Chance filed an Amended Complaint on February 21, 2003, naming several additional

defendants: Joseph Sambrook, Chris Lyddy, Peter Bravo, Philip Mascendaro, Julius

Hull, Kevin Wells, and the Fairfield Police Department (collectively referred to as the

"Fairfield defendants"), and Design Trust. The defendants filed numerous motions,

including a Motion to Dismiss by the Cundys and Design Trust [Dkt. No. 9] and a Motion

for More Definite Statement by the Fairfield defendants [Dkt. No. 23]. After notice to

Chance [Dkt. No. 15], the court held oral argument on these and other pending motions.

As a result of that argument, and rulings made on the record, the court granted in part

and denied in part the motion to dismiss and gave Chance the opportunity to file a

second amended complaint.[1] He did so on July 31, 2003 [Dkt. No. 54]. On August 1,

_____

[1] Chance withdrew his claims against Eetitla Cundy and Design Trust on the record at
the June 12, 2003 hearing. See Transcript at 24 [Dkt. No. 44].

- 1 -

2003, he filed a revised version of that amended complaint on August 1, 2003 ("Rev. Am. Compl.") [Dkt. No. 55], and, on August 7, 2003, filed "Plaintiff's Supplemental Complaint" ("Supp. Compl.") [Dkt. No. 56]. The court treats the latter two pleadings collectively as the sum of the plaintiff's claims.[2]

The Fairfield defendants filed a Motion to Dismiss all claims against them [Dkt. No. 60], as did Cundy [Dkt. No. 58]. For the reasons that follow, the court grants both motions in part and denies both motions in part.

## II.    ALLEGED FACTS

The plaintiff alleges the following facts which the court accepts as true solely for the purpose of this motion to dismiss.

Chance and Cundy's son met each other by virtue of the close proximity of their respective workplace in Westport, CT. On August 12, 2002, Chance telephoned Cundy's son, and the two spoke for about 20 minutes. Thereafter, Cundy asked his son about the call, and Cundy learned that Chance is black.

On August 16, 2002, Chance telephoned the Cundy residence and left a message for Cundy to call Chance. Chance believed that Cundy was circulating rumors about him and wished to discuss the matter. Apparently, earlier that day, Cundy had telephoned both his son's boss and Chance's boss to tell Chance not to call his son anymore. Two days later, on August 18, 2002, Cundy reported to the Fairfield Police Department that Chance was making harassing calls to his son and that neither Cundy

---

[2] "[C]ourts may look to submissions beyond the complaint to determine what claims are presented by an uncounseled party." Boguslavsky v. Kaplan, 159 F.3d 715, 719 (2d Cir. 1998).

nor his son wanted Chance to call.  That same day, Police Officer Kevin Wells called Chance's boss to inquire about Chance's employment.  Officer Wells then called Chance's home and left a message requesting Chance to return his call, without stating his reason for calling.  Chance returned the call.  Officer Wells told Chance not to call the Cundy home again and that, if he continued to do so, he could be arrested.  Officer Wells recorded that conversation without Chance's permission.

More than six months later, on February 6, 2003, Lieutenant Chris Lyddy called Chance's place of employment and asked to have Chance call him, which Chance did that day.  Lieutenant Lyddy told Chance he had to come down to the Police Department to talk with him, which Chance did.  Chance alleges that, when he did, he was taken to the second floor and placed in a room with the door locked.  Detective Bravo told Chance that Cundy had called and said that Chance had been to his house, was stalking him at his job, and had left a message on his work answering machine, all of which Chance denies.  He was interrogated for about 20 minutes, and he was then allowed to leave.

Chance alleges that he is subject to possible damage because of the police report in this matter.  In his Supplemental Complaint, he alleges he is subject to possible loss of his Public Service License, and Section 8 housing subsidy.  He also alleges that Cundy's actions are "sufficiently attributed [sic] to the Fairfield Police Department that he was intertwined with them and he received [sic] enough aid and encouragement from" the Fairfield defendants that the claims are cognizable under 28 U.S.C. Section 1983.  Rev'd. Amd. Complaint, ¶ 53 (Dkt. No. 56).  Chance seeks, <u>inter</u>

alia, compensatory and punitive damages against the Fairfield defendants in the amount of $12 million and against Cundy in the amount of $60 million.

## III.   DISCUSSION

### A.   Standard of Review

The court notes that, in considering a motion to dismiss a complaint filed by a pro se plaintiff, the court "must construe pro se pleadings broadly, and interpret them 'to raise the strongest arguments they suggest.'"  Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).  "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).  Accordingly, a court is bound to accept as true all factual allegations in the complaint and draw all inferences from those allegations in the light most favorable to the plaintiff.  See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  This is so even if the plaintiff is unlikely ultimately to prevail.  "Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test."  Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 6691 673 (2d Cir. 1995) (internal quotation marks omitted)).

In considering such a motion, the court must accept the factual allegations alleged in the complaint as true and all inferences must be drawn in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v.

- 4 -

Scherer, 468 U.S. 183 (1984).  However, "bald assertions and conclusions of law will not suffice to state a claim . . . ."  Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000) (citations omitted).

**B.    Claims Against the Fairfield Defendants**

**1.    Wiretapping/Eavesdropping**

Chance asserts various claims under state and federal statutes based upon the taping of a conversation with him by Officer Wells.  Rev. Am. Compl. ¶ 30.  Chance alleges that Officer Wells violated 18 U.S.C. § 2510 and Conn. Gen. Stat. §§ 53a-187 through 53a-189 and 54-41 et seq.  These statutes define the crimes of wiretapping and eavesdropping under federal and state law.  However, no cause of action can lie under either federal or state law because the complaint alleges that Officer Wells was acting in his capacity as a law enforcement official and that he was a party to the conversation he allegedly taped.

**a.    18 U.S.C. § 2510, et seq.**  Chance first cites to subsection 18 U.S.C. § 2510, which is part of Title III of the Omnibus Crime Control and Safe Street Act of 1968 (the "Federal Wiretap Act").  The purpose of this Act is "to control conditions under which interception will be permitted in order to safeguard privacy of wire and oral communications."  Lam Lek Chong v. United States, 929 F.2d 729, 732 (D.C. Cir. 1991).  The Act expressly provides that "[i]t shall not be unlawful under this chapter for a person acting under color of law to intercept a wire . . . communication, where such person is a party to the communication."  18 U.S.C. § 2511(2)(c).

In the case at bar, in light of plaintiff's claim against Officer Wells under 18 U.S.C. Section 1983, the court construes the complaint as alleging that Officer Wells was acting under color of law at all times relevant to plaintiff's claims. Accordingly, section 2511(2)(c) applies and, because Officer Wells was a party to the subject conversation, he cannot be liable under 18 U.S.C. § 2510, et seq.

   **b. Conn. Gen. Stat. § 54-41 et seq.** Chance next cites to Conn. Gen. Stat. §§ 54-41a et seq., which is the Connecticut Wiretap and Electronic Surveillance Act ("Connecticut Wiretap Act"). Connecticut's legislature modeled the Connecticut Wiretap Act on the Federal Wiretap Act. State v. Martin, 171 Conn. 524, 543 (1976). While the Connecticut Act does not expressly set forth any of the exemptions which are set forth in 18 U.S.C. § 2511, the Connecticut Supreme Court interpreted has the Act as implying certain exemptions. Significantly, the court has unequivocally held that the Connecticut Wiretap Act allows wiretaps in instances where at least one party to the call consents. State v. Grullon, 212 Conn. 195, 207 (1989). In the instant case, Officer Wells' consent to the taping, as a party to the conversation, renders his conduct beyond the reach of the Connecticut Wiretap Act. Accordingly, no cause of action can lie under the Connecticut Wiretap Act.

   **c. Conn. Gen. Stat. §§ 53a-187, et seq.** Chance finally cites to Conn. Gen. Stat. § 53a-187 which is Connecticut's eavesdropping statute. It provides that "[a] person is guilty of eavesdropping when he unlawfully engages in wiretapping or mechanical overhearing of a conversation." The words "wiretapping" and "mechanical overhearing of a conversation" are defined to make it clear that the

eavesdropping occurs only when there is an "intentional overhearing or recording of a conversation" which is carried out "by a person other than a sender or receiver thereof" and "without the consent" of at least one party thereto. Conn. Gen. Stat. § 53a-187(a)(1)(2). Thus, it is clear that one may tape one's own conversation, whether one is the caller or the one being called. As an added precaution, the legislature made it clear that Conn. Gen. Stat. §§ 53a-187 and 53a-189 "shall not apply to wiretapping by criminal law enforcement officials in the lawful performance of their duties and does not affect the admissibility of evidence in any proceedings other than a prosecution for eavesdropping or tampering with private communications." Conn. Gen. Stat. § 53a-187. This claim is similarly unavailing since, as alleged by Chance, Officer Wells was a party to the conversation: he was the receiver. Thus, he could not have violated section 53a-187.

Chance makes a related claim concerning the recording of the conversation by Officer Wells, that is that it violated his right of privacy secured by Article I, Section 7 of the Connecticut Constitution. That section provides, "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures. . . ."[3] To invoke the protection of article I, section 7, a plaintiff must establish a reasonable expectation of privacy. State v. Bernier, 246 Conn. 63, 71 (1998). Any such expectation of privacy must be one that Connecticut citizens would consider reasonable. Id. at 72. Legislative enactments, as expressions of public policy, are

---

[3] The court notes that the capture of a telephone conversation may be considered a search within the meaning of the Fourth Amendment of the United States Constitution. See Katz v. United States, 389 U.S. 347, 351-52 (1967).

"relevant to the resolution of whether [an] expectation of privacy is one that Connecticut citizens would recognize as reasonable."  Id. at 73.

In the instant case, the court needs only to look at Conn. Gen. Stat. §§ 53a-187 et seq. which expressly provides that its prohibition against eavesdropping "shall not apply to wiretapping by criminal law enforcement officials in the lawful performance of their duties."  As such, Connecticut citizens cannot reasonably expect that, when one calls a police station, the police will not be recording the conversation.  Accordingly, Chance's claims based on article I, section 7 of the Connecticut Constitution must fail.

For the foregoing reasons, Chance's allegations relating to the act of recording his conversation with Officer Wells fails to state a cause of action under federal or state statutes or the state constitution.

### 2.   Privacy Claims

Chance also asserts a section 1983 claim against Officer Wells and Lieutenant Lyddy claiming that each, on separate occasions, violated his right to privacy by calling his employer.  Rev. Am. Compl., ¶¶ 22, 39 and 40.

**a.   Claim against Officer Wells.**  Chance alleges that, on April 18, 2002, when Officer Wells called Chance's boss, he inquired about Chance's employment.  The court cannot conceive of how theses facts, as alleged and viewed in a light most favorable to the plaintiff, can state an invasion of privacy cause of action.

The court presumes that Chance is seeking to invoke the constitutional right of privacy recognized in Griswold v. Connecticut, 381 U.S. 479 (1965), and its progeny. However, the constitutional right of privacy covers matters of such fundamental

importance as "the decision whether to bear or beget a child," <u>Eisenstadt v. Baird</u>, 405 U.S. 438 (1972), or "the security of one's privacy against arbitrary intrusion by the police," <u>Berger v. New York</u>, 388 U.S. 41 (1967).  The court concludes that it does not create a right to be free from telephone inquiries by the police, during the course of a police investigation, even at one's place of employment.  Simply, there is no constitutional right to be free of investigation.  <u>United States v. Trayer</u>, 898 F.2d 805, 808 (D.C. Cir. 1990).

While Connecticut recognizes a cause of action for invasion of privacy, <u>Goodrich v. Waterbury Republican American, Inc.</u>, 188 Conn. 107 (1982), plaintiff has failed to allege it.  The only possible privacy right at issue here would be unreasonable intrusion upon plaintiff's seclusion.  <u>See</u> <u>Venturi v. Savitt, Inc.</u>, 191 Conn. 588, 591 (1983) (citing Restatement (Second) of Torts, §652 and Prosser, Torts (4th Ed. 1971) § 117, p.804-15).  However, all that is alleged is a phone call to his employer inquiring about his employment.  This cause of action requires an intrusion that would be "highly offensive to a reasonable person."  Restatement (Second) of Torts, § 652B.  Chance does not allege anything in regard to this phone call that would suggest he could offer proof to meet this element.  Thus, no right of privacy invasion is alleged.

       **b.**    <u>**Claim against Lieutenant Lyddy.**</u>  Chance alleges that, on February 6, 2003, Lieutenant Lyddy called Chance's place of employment and left a message with Chance's boss to have Chance call him.  Rev. Am. Complaint, ¶ 39.  The plaintiff alleges that this telephone call violated his right to privacy.  <u>Id</u>. ¶ 40.

Again, as stated above with respect to Officer Wells' call, the court finds that Chance has failed to allege a right to privacy that was in any way violated.  Notably, it is alleged that Lieutenant Lyddy's call did not even solicit information regarding Chance or his employment, but merely requested Chance's employer to have Chance return his call.  Rev'd. Amd. Complaint, ¶ 39.

Chance further alleges that the Lieutenant Liddy's telephone call also constituted an "illegal search in violation of the 4th Amendment to the Constitution of the United States and Article 1, Section 7 of the Connecticut Constitution."  Id. at ¶ 40.  The Fourth Amendment serves to protect people from arbitrary and oppressive governmental conduct.  Michigan v. Tyler, 436 U.S. 499, 504 (1978).  The Fourth Amendment only prohibits conduct which is unreasonable.  Carroll v. United States, 267 U.S. 132, 147 (1925); United States v. Paulino, 850 F.2d 93 (2d Cir. 1988).  As instructed by the Supreme Court in Bell v. Wolfish, this court is required to engage in "a balancing of the need for the particular search against the invasion of personal rights that the search entail."  441 U.S. 520, 559 (1979).  To find protection under the Fourth Amendment, "an expectation of privacy must be one that society is 'prepared to recognize as legitimate.'"  New Jersey v. T.L.O., 469 U.S. 325, 338 (1985) (quoting Hudson v. Palmer, 468 U.S. 517, 526 (1984)).

Based on Chance's allegations, both calls were made as a follow-up to a citizen complaint.  As to the Officers Wells' call, the complaint cryptically alleges that he asked about the plaintiff's employment.  As to Lieutenant Lyddy's call, the complaint alleges that, in substance, it was a request that the plaintiff return his call.  Neither were

seizures.  The court concludes, taking Chance's allegations in the light most favorable

to him, that he fails to state a claim that either defendant violated his Fourth

Amendment right to be free from unreasonable searches.

For the reasons stated above, the court concludes that Chance's allegations

regarding the two phone calls fail to state a cause of action.

### 3.    Miranda Warnings

Chance alleges that Detective Bravo did not advise him of his Miranda rights[4]

when Bravo questioned him on February 6, 2003 at the police station.  However, failure

to give Miranda warnings does not give rise to a claim that can be asserted under

Section 1983.  Neighbour v. Covert, 68 F.3d 1508, 1510 (2d Cir. 1995) (per curiam).

Rather, "[t]he remedy for a Miranda violation is the exclusion from evidence of any

ensuing self-incriminating statements."  Id.  In the instant case, Chance has not been

charged with any crime for which he would have to stand trial.  There simply is no forum

in which any unwarned statements could possibly be used against him.  Thus, Chance

has failed to state a claim for violation of his Miranda rights.

### 4.    Unreasonable Seizure

Chance claims, based on Lieutenant Lyddy's telephone call of February 6, 2003,

that Lyddy told him he had to come to the Station under threat of arrest.  In a similar

case, the Seventh Circuit held that:  "We do not believe that a telephone call to an

identified suspect from a detective investigating a charge of vandalism constitutes such

---

[4]  See Miranda v. Arizona, 384 U.S. 436 (1966).

a restraint on a suspect's freedom that his coming to the station house is anything other

that a voluntary action." Rodgers v. Lincoln Towing Service Inc., 771 F. 2d 194, 200

(7th Cir. 1985). Even if the call was threatening or abusive, Chance could still have

merely hung up and not gone to the station house.[5] Id. As in the Rodgers case,

Chance's allegations do not support a Fourth Amendment violation in connection with

Lyddy's phone call.

Chance also claims that this phone call violated his right to due process under

the Fifth, Sixth and Fourteenth Amendment to the United States Constitution and Article

I, section 8 and 9 of the Connecticut Constitution. While the complaint is unclear, the

court surmises that Chance is basing these claims on the Lieutenant Lyddy's failure to

reveal the reason why he wanted to talk to Chance. Even broadly reading plaintiff's

claim, the court concludes that plaintiff states no claim.

A claim of substantive due process must be based on an allegation that the

defendant's conduct "shocks the conscience." County of Sacramento v. Lewis, 523

U.S. 833 (1998). "The paradigm examples of conscience-shocking conduct are

egregious invasions of individual rights." United States v. Rahman, 189 F. 3d 88, 131

(2d Cir. 1999) (citing Rochon v. California, 342 U.S. 165, 172 (1952) (breaking into

suspect's bedroom, forcibly attempting to pull capsules from his throat, and pumping his

stomach without his consent)). Further, where the complained-of conduct occurred in

---

[5] Chance's Amended Complaint contains further allegations about the call, which allegations suggest it was not as threatening, but rather allowed Chance flexibility as to his visit. Amended Complaint at paras. 31-38 [Dkt. No. 4]. However, the court considers the pending Motions to Dismiss only as they relate to the allegations in the pending pleadings of August 1 and 7, 2003, which the court considers as the sum of plaintiff's claims. See supra, p. 2.

the course of a police investigation, a plaintiff faces a very heavy burden in establishing outrageous conduct.  United States v. Schmidt, 105 F.3d 82, 91 (2d Cir. 1997). Accordingly, this court holds that, as a matter of law, failure of an officer – during the course of investigating a citizen complaint – to tell a person why his presence is wanted at the station, does not "shock the conscience."

Chance's claim of a violation of his procedural due process rights based on the failure to tell him why his presence was needed likewise fails.  Such a claim requires that the state deprived the plaintiff of a protected property or liberty interest.  White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1060-61 (2d Cir. 1993).  This court is unaware of any constitutionally protected right to be told why the police wanted to talk to someone.  Accordingly, no claim based on procedural due process can lie.

Lastly, in connection with this February 6, 2003 phone call, Chance cites to the Sixth Amendment as a basis for his claim.  While the Sixth Amendment provides a right to counsel, that right "attaches only at the initiation of adversary criminal proceedings." Davis v. United States, 512 U.S. 452, 456 (1994) (citing United States v. Gouveia, 467 U.S. 180, 188 (1984)).  The Supreme Court has clarified that such adversary criminal proceedings are initiated "'by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"  Gouveia, 467 U.S. at 188 (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1972) (plurality opinion)).  "[B]efore proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel." Davis, 512 U.S. at 457.  As alleged, the claim arose during the Lyddy phone call at

which time Chance had not been charged with a crime.[6]  Accordingly, he had no Sixth

Amendment right during the phone call.

### 5.    Detective Bravo "Seizure"

Chance further alleges a violation of the Fourth Amendment because he was

held "in custody" by Detective Bravo in a "locked room" for 20 minutes when he

reported to the Police Station on February 6, 2003, as requested.  It is well established

that "[a] Section 1983 claim of false arrest based on the Fourth Amendment right to be

free from unreasonable seizures may not be maintained if there was probable cause for

the arrest."  Kent v. Kent, 312 F.3d 568, 573 (2d Cir. 2002); see also Weyant v. Okst,

101 F.3d 845, 852 (2d Cir. 1996); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d

Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting

officer had probable cause.").  Thus, a finding of probable cause is a complete defense

to an action for false arrest.  See, e.g., Bernard v. United States, 25 F.3d 98, 102 (2d

Cir. 1994).

In determining whether police officers had probable cause to make an arrest,

courts examine the "totality of the circumstances."  Bernard, 25 F.3d at 102 (quoting

Illinois v. Gates, 462 U.S. 213, 230 (1982)).  "Probable cause is established when the

arresting officer has knowledge or reasonably trustworthy information sufficient to

warrant a person of reasonable caution in the belief that an offense has been

committed by the person to be arrested."  Singer, 63 F.3d at 119 (internal quotation

marks omitted).  If there are no material facts in dispute "as to the pertinent events and

---

[6]  Indeed, Chance does not allege that he was ever charged with a crime.

the knowledge of the officers," the question of probable cause may be determined as a matter of law.  Weyant, 101 F.3d at 852; see also Singer, 63 F.3d at 118-19.

Chance alleged that Cundy made a complaint, which could be sufficient probable cause to "arrest" Chance by interviewing him for 20 minutes.[7]  However, Chance also has alleged that, "[a]t all times Lieutenant Lyddy and Detective Bravo knew that the Plaintiff, Stanley Chance has never been to David Cundy's house, stalked him at his job or left a message on his answering machine at his job."  Rev. Am. Compl. at ¶ 50. Assuming this allegation to be true, as the court must for the sole purpose of this pending motion, the court finds that there was no probable cause, or even reasonable suspicion, that Chance had violated the law, harassment in the second degree, Conn. Gen. Stat. § 53a-183,[8] or stalking, Conn. Gen. Stat. § 53a-181e.[9]  Therefore, Chance has alleged a sufficient basis to assert a Fourth Amendment claim that the detention may have been a false arrest or groundless Terry stop which could serve as the basis for a Section 1983 claim against Detective Bravo.[10]

---

[7]  Such a complaint would certainly be "reasonable suspicion" for a Terry stop.  See Terry v. Ohio, 392 U.S. 1 (1968).

[8]  Conn. Gen. Stat. § 53a-181e(a) defines harassment in the second degree as when a person, "recklessly causes another person to reasonably fear for his physical safety by wilfully and repeatedly following or lying in wait for such other person."

[9]  Conn. Gen. Stat. § 53a-183(a) defines harassment in the second degree as when a person, "with intent to harass, annoy or alarm another person, . . . makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

[10]  Whether Chance has a factual basis to make this allegation is another issue.  See F.R.Civ.R. 11.  This ruling is without prejudice to a motion for summary judgment on the merits.
      The alternative ground to dismiss, qualified immunity, is also denied.  On the allegations, no reasonable officer would have probable cause, or even reasonable suspicion, if he knew the complaint was false.

However, there is no allegation that Lieutenant Lyddy participated in the alleged detention (except insofar as he called Chance to come to the police station). Therefore, no cause of action can be maintained against him for this particular incident.

### 6.    Section 1985 Conspiracy

Chance further alleges a claim under 18 U.S.C. Section 1985. In order to state a claim under Section 1985, a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the law, (3) an overt act in furtherance of the conspiracy, and (4) a deprivation of a plaintiff's right as a citizen of the United States. Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). "'It is not sufficient to allege that the [private and state] defendants merely acted in concert or with a common goal. There must be allegations that the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding.'" Tarkowski v. Robert Bartlett Realty Co., 644 F.2d 1204, 1206 (7th Cir. 1980) (quoting Sparkman v. McFarlin, 601 F.2d 261, 268 (7th Cir. 1979) (en banc) (concurring opinion of Sprecher, J.)); see also Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983) (per curiam) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). Further, any such allegations of a mutual understanding must be supported by facts which suggest a "meeting of the minds" between the private actor and the state actor. See Tarkowski, 644 F.2d at 1206.

No set of facts consistent with Chance's allegations would warrant relief under Section 1985. As an initial matter, Chance has failed to allege a cognizable constitutional right which could have been the object of any alleged conspiracy.

Chance simply does not have a constitutional right to telephone Cundy's minor son. To the extent Chance seeks to assert a section 1985 claim based on the defendants' attempt to violate his right to equal protection of the law because of his race, the claim is fatally deficient because, even if Cundy was motivated by racial animus, there is no allegation that the Fairfield defendants were also so motivated. Clearly, based on the allegations, Cundy and the Fairfield defendants had contact with each other, and the latter took steps based on what the former told them. However, that occurs every day in law enforcement: citizens make complaints and police officers investigate them. Critically, Chance alleges only that Cundy was motivated by racial animus, without alleging any facts to suggest that any of the Fairfield defendants even knew he was black until February. Thus, Chance has failed to allege a section 1985 claim.[11]

### 7.  Malicious Prosecution

Chance alleges that the conduct of the defendants "subjected him to malicious prosecution." Rev. Compl., ¶ 54. State law governs a claim for malicious prosecution brought under Section 1983. Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995). Under Connecticut law, "in addition to malice, 'an action for malicious prosecution . . . requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; [and] (3) the defendant acted without probable cause." Mulligan v. Rioux, 229 Conn. 716, 731 n.19 (1994) (quoting McHale v. W.B.S. Corp., 187 Conn.

---

[11]  To the extent that Chance seeks to allege a Section 1986 claim, that also must fail as it is derivative of a Section 1985 claim. Jews for Jesus v. Jewish Comm. Rel. Council, 968 F.2d 286, 292 (2d Cir. 1992).

444, 447 (1982)).

Accordingly, a claim for malicious prosecution requires, at a minimum, a prosecution. In the instant case, however, the complaint, taken as a whole and in the light most favorable to the plaintiff, contains no suggestion of a prosecution; there is no allegation that he was charged with anything. Thus, his claim that he was subjected to malicious prosecution must fail.

### 8.     <u>Section 1981</u>

To establish a section 1981 claim, Chance must allege that he is a member of a racial minority, that the defendant had an intent to discriminate against him on the basis of race, and that the discrimination concerned one or more of the section 1981 activities. <u>Lauture v. I.B.M</u>, 216 F. 3d 258, 261 (2d Cir. 2000). Those activities include making and enforcing contract, and bringing suit. 42 U.S.C. Section 1981. At the June 12, 2003 argument on Chance's prior complaint, Chance answered the court as to the basis of his Section 1981 claim by saying it was based on the theory that Cundy tortiously interfered with his employment relationship. Cundy argues that there are no allegations in the pending complaint about harm to Chance. In plaintiff's Supplemental Complaint, Chance does allege that, because of Cundy's complaint, and the resultant Incident Report of the Fairfield Police Department, he is "subject" to possible revocation of his Public Service License and his Section 8 housing. Suppl. Complaint, ¶¶ 1 and 2 [Dkt. No. 56]. However, Chance does not allege he has actually suffered any harm as a result of a Fairfield defendant's action, only that he might. Consequently, Chance's claim does not satisfy the "case or controversy" requirement of Article III of the United States Constitution. <u>See</u> <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155 (1990) (holding that

a federal claimant must allege harm which is actual or imminent, not conjectural or hypothetical).  Accordingly a cause of action under section 1981 has not accrued, and Chance fails to state a cause of action under section 1981.

### 9.    Fifteenth Amendment

Chance claims that his rights under the Fifteenth Amendment to the U.S. Constitution have been violated, and he has a cause of action under Section 1983 for that violation.  Rev. Am. Compl.,¶ 38 [Dkt. No. 55].  The Fifteenth Amendment guarantees a person's right to vote.

There are no allegations that any of the defendants interfered with Chance's right to vote, not can the court construe any of his allegations to suggest that.  Thus, this claim must fail.

### 10.    Connecticut Constitution

Throughout his complaints, Chance alleges violations of the Connecticut Constitution in addition to the alleged violations of the federal constitution.  The court concludes that, in all respects relevant to the alleged constitutional violations at issue in the instant case, the rights provided by the Connecticut Constitution are comparable to those provided by the federal constitution.  See Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 171-72 (D. Conn. 2003) (citing Binette v. Sabo, 244 Conn. 23, 35-47 (1998)). Therefore, the court further concludes that analysis of the state claim is the same as that of the federal claim and the above analysis of the federal constitutional claims also controls the state constitutional claims.

### 11.    Defamation

Chance also alleges that he was defamed by the defendants.  Specifically, he flatly states, "All the defendants subjected Plaintiff, Stanley to malicious prosecution and defamation."  Am. Rev. Compl at ¶ 54.

The Connecticut Supreme court has stated that "[a] defamation action is based on the unprivileged communication of a false statement that tends either to harm the reputation of another by lowering him or her in the estimation of the community or to deter others from dealing or associating with him or her.'"  Woodcock v. Journal Publishing Co., 230 Conn. 525, 554 (1990) (quoting 1 D. Pope, Connecticut Actions and Remedies: Tort Law (1993) § 10:03, p. 10-10).  Defamation claims are divided into two categories: libel, which is written defamation, and slander, which is oral defamation.  See Charles Parker Co. v. Silver City Crystal, Co., 142 Conn. 605, 610-11 (1955).  One universal element of defamation is publication.  See, e.g., Burns v. Telegram Pub. Co., 89 Conn. 549, 552 (1915) (defining defamation as "a false publication, calculated to bring one into disrepute").

In the instant case, plaintiff has not alleged any instance in which the Fairfield defendants actually published a statement about plaintiff.  Significantly, the complaint does not satisfy even the most basic pleading requirement: it fails to put the Fairfield defendants on "'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2004) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Accordingly, the claim for defamation against the Fairfield defendants is granted.

- 20 -

C.    **Claims Against Cundy**

1.    **Section 1983**

Chance alleges that Cundy has violated section 1983 on various grounds. Section 1983 requires conduct under color of state law.  Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268.  See also Benavidez v. Gunnell, 722 F.2d 615, 618 (10th Cir. 1983) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under Section [] 1983 . . . .").  "The joint action inquiry focuses on whether the state has 'so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity . . .'" Gorenc v. Salt River Project Agric. Improvement and Power Dist., 869 F.2d 503, 507 (9th Cir. 1989) (quoting Burton v. Wilmington Parking Auth., 365 U.S. 715 (1961)).  "A private party does not act under color of state law when [he] merely elicits but does not join in an exercise of official authority."  Auster Oil & Gas. Inc. v. Stream, 764 F.2d 381, 388 (5th Cir. 1985).

There is no allegation that Cundy did anything other than lodge complaints with the police.  As such, the section 1983 is insufficient and is dismissed.

2.    **Section 1985**

Chance has also attempted to allege a section 1985 and section 1986 claim against Cundy.  They fail for the reasons stated above in section B.6, supra.

3.    **Section 1981**

Chance has also attempted to allege a section 1981 claim against Cundy.  It fails

for the reasons discussed above in section B.8, supra.

### 4.    Connecticut Constitution

Chance also seeks to assert a claim against Cundy under the various provisions of the Connecticut Constitution.  They fail for the same reasons discussed above in section B.10, supra.

### 5.    Defamation

Chance alleges that Cundy subjected him to defamation.  The court construes this claim as being based on Cundy's report(s) to the police.  "Defamation is comprised of the torts of libel and slander.  Defamation is 'that which tends to injure "reputation" in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory, or unpleasant feelings or opinions against him.'"  DeVito v. Schwartz, 66 Conn. App. 228, 234 (2001) (quoting W. Prosser & W. Keeton, Torts (5th Ed. 1984)).  Falsely reporting a crime which is punishable by imprisonment is libel per se under Connecticut law.  Battista v. United Illuminating Co., 10 Conn. App. 486, 493 (1987).

In the instant case, Chance alleges that Cundy falsely reported that Cundy had committed certain acts which could constitute the crime of stalking in the third degree, a Class B misdemeanor, Conn. Gen. Stat. § 53a-181e, or the crime of harassment in the second degree, a class C misdemeanor.  Conn. Gen. Stat. § 53a-183.  Both of these crimes are punishable by imprisonment.  See Conn. Gen. Stat. § 53a-36.  Accordingly, plaintiff has fairly alleged libel per se against Cundy and the motion to dismiss with respect to this claim is denied.

**IV.    CONCLUSION**

For the foregoing reasons, the court grants, in part, and denies, in part, the defendant Cundy's Motion to Dismiss [Dkt. No. 58] and Fairfield defendants' Motion to Dismiss [Dkt. No. 60].  The only remaining claims are a section 1983 claim against Detective Bravo for false arrest and the claim against Cundy for defamation.

Mindful of the Second Circuit's admonition in <u>Branum v. Clark</u>, 927 F.2d 698, 705 (2d Cir. 1991), the court notes that it has previously granted the plaintiff an opportunity to amend his complaint.  Plaintiff having taken advantage of that opportunity and still having failed to plead many of his attempted claims, the court will not grant him leave to further replead.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 25th day of June, 2004.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge