UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STANLEY CHANCE | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3-03-cv-40 (JCH) |
| | : | |
| DAVID CUNDY, ET AL. | : | |
| Defendants | : | SEPTEMBER 7, 2004 |

**RULING RE: MOTION FOR SUMMARY JUDGMENT [DKT. NO. 125]**

**I.    INTRODUCTION**

The plaintiff, Stanley Chance ("Chance"), filed this action, pro se, on September

6, 2002, against David Cundy ("Cundy") and Eetitila Cundy [Dkt. No. 2].  As of right,

Chance filed an Amended Complaint on February 21, 2003, naming several additional

defendants:  Joseph Sambrook, Chris Lyddy, Peter Bravo, Philip Mascendaro, Julius

Hull, Kevin Wells, and the Fairfield Police Department (collectively referred to as the

"Fairfield defendants"), and Design Trust.[1]   On July 31, 2004, Chance filed an

amended complaint. [Dkt. No. 54].  On August 1, 2003, he filed a revised version of that

amended complaint ("Rev. Am. Compl.") [Dkt. No. 55], and, on August 7, 2003, filed

"Plaintiff's Supplemental Complaint" ("Supp. Compl.") [Dkt. No. 56].  The court treats the

latter two pleadings collectively as the sum of the plaintiff's claims.[2]  On June 25, 2004,

the court granted, in part, and denied, in part, the motions to dismiss filed by the

Fairfield Defendants [Dkt. No. 60] and Cundy [Dkt. No. 58].  See Order [Dkt. No. 119].

---

[1]  Chance withdrew his claims against Eetitla Cundy and Design Trust on the record at
during a June 12, 2003 hearing.  See Transcript [Dkt. No. 44], at 24.

[2]  "[C]ourts may look to submissions beyond the complaint to determine what claims are
presented by an uncounseled party."  Boguslavsky v. Kaplan, 159 F.3d 715, 719 (2d Cir. 1998).

As a result, the only claims remaining are a claim, pursuant to 42 U.S.C. § 1983, for false arrest in violation of the Fourth Amendment against Detective Bravo and a claim for defamation against Cundy.

Detective Bravo now moves for summary judgment as to the section 1983 claim against him. See Def.'s Mot. for Summary Judgment [Dkt. No. 125]. On July 30, 2004, the court issued a pro se notice to Chance advising him of his burden in opposing the motion. See Order [Dkt. No. 128]. To date, Chance has not responded. For the reasons set forth below, the court grants Detective Bravo's motion and orders the plaintiff to show cause why the court should not dismiss the only remaining claim, a state law action for defamation, against Cundy.

## II.    FACTS[3]

On August 18, 2002, David Cundy, a resident of Fairfield, filed a complaint against Stanley Chance with the Fairfield Police Department ("FPD"), alleging that he had made harassing phone calls to the Cundy home. Kevin Wells, an officer with the FPD, contacted Stanley Chance and asked him not to contact the Cundy residence anymore. On February 4, 2003, Cundy filed a report that Chance had come to his home in a silver livery vehicle to deliver a summons and complaint. Cundy expressed concern because he believed Chance was a convicted felon and believed Chance worked for a local livery service. A search of the Connecticut State Police records revealed that Chance had fifteen prior arrests for a variety of crimes, including burglary, first degree arson, and first degree assault on a police officer. Further, the search

---

[3] These facts are not in dispute or are construed in favor of Chance.

revealed that Chance was then on probation.  Christopher Lyddy, a lieutenant with the FPD, spoke with Chance's probation officer who described Chance as a very violent and angry person who does not relate well with authority.  Based upon these facts Officer Lyddy believed that reasonable suspicion existed to question Chance with regard to violating criminal trespass statute, Conn. Gen. Stat. § 53a-107.[4] Subsequently, on February 5, 2003, Cundy filed a report with the FPD that his administrative assistant received a telephone call at his place of employment from a man identifying himself as Chance.

Lieutenant Lyddy had no reason to believe that Cundy was fabricating any of the allegations he made against Chance when he contacted the FPD on February 4, 2003 and February 5, 2003.  Accordingly, the next day, on February 6, 2003, Lieutenant Lyddy left a message with Chance's employer for Chance to call the FPD.  In response, Chance called Lieutenant Lyddy who requested that Chance come to the police station to meet with an investigator regarding Cundy's complaints.  Lieutenant Lyddy assigned the defendant Peter Bravo, a detective in the FPD, to meet with Chance.  The purpose behind interviewing Chance was to ascertain whether or not he trespassed upon the Cundy property after having been warned not to have any personal contact with them.

---

[4] Section 53a-107 of the Connecticut General Statutes ("Criminal trespass in the first degree: Class A misdemeanor") in pertinent part, provides:

A person is guilty of criminal trespass in the first degree when. . . Knowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person

Chance came to the FPD at approximately 2:30 p.m. on February 6, 2003.  At that time, Detective Bravo did not know whether Chance had been to the Cundy residence, but also had no reason to believe that Cundy's reports to that effect were untrue.  For the express purpose of ascertaining whether or not Chance had trespassed upon the Cundy property, in violation of section 53a-107, Detective Bravo met with Chance.  He questioned Chance as to any contact he had had with Cundy or his son in the previous three days.  Chance advised Detective Bravo that he had not been to the Cundy residence on February 3, 2003.  Chance advised Detective Bravo that a Marshal had delivered a civil summons and complaint to the Cundy residence on his behalf.  The livery vehicle Chance had driven to the police station did not match the description of the vehicle that Cundy had reported seeing at his house a couple of days earlier.  Based upon the information gathered during this twenty minute interview, Detective Bravo found no evidence that Chance had been to the Cundy residence on February 3, 2003.  Chance was not charged with a crime and left the police station.

## III.    DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)); Hermes Int'l v. Lederer de Paris Fifth Ave, Inc., 219 F.3d 104, 107 (2d Cir. 2000).  The moving party bears the burden of showing that no genuine factual dispute exists.  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)).  In

4

assessing the record to determine if such issues exist, all ambiguities must be resolved, and all inferences drawn, in favor of the party against whom summary judgment is sought.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 721 (2d Cir.1994).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Anderson, 477 U.S. at 255.  When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor, Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Lipton v. The Nature Company, 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).  Additionally, a party may not rest on the "mere allegations or denials" contained in his pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); see also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).  Where a non-moving party fails to respond to facts asserted in support of summary judgment, the

court may accept the movant's factual assertions as true.  See Local Civ. R. 56(a)(1)

("All material facts set forth in [movant's Rule 56(a)(1)] statement will be deemed

admitted unless controverted. . ."); see also  Vermont Teddy Bear Co. v. 1-800

BEARGRAM Co., 373 F.3d 241, 246 (2d Cir. 2004) (discussing Local Civ. R. 56.2 of the

Southern and Eastern districts of New York).  However, the court is mindful of the

Second Circuit's admonition that "courts, in considering a motion for summary

judgment, must review the motion, even if unopposed, and determine from what is

before it whether the moving party is entitled to summary judgment as a matter of law."

Vermont Teddy Bear Co., 373 F.3d at 246 (quotation marks and citation omitted).

**B.    Fourth Amendment/False Arrest**

Chance alleges that Detective Bravo violated his right against unreasonable

search and seizure as secured by the Fourth Amendment.  Specifically, Chance

complains that Detective Bravo had no probable cause for detaining him at the Fairfield

Police Station while questioning him about the harassment complaint which Cundy had

filed against him.  However, based on the totality of the undisputed facts, the court finds

that the level of intrusiveness of the encounter was not so great as to classify it as an

arrest for which Detective Bravo would have needed probable cause.  See Posr v.

Doherty, 944 F.2d 91, 98 (2d Cir. 1991).  Rather, construing the undisputed facts in a

light most favorable to Chance, the encounter could, at most, be considered an

investigative stop, for which Detective Bravo only needed reasonable suspicion.  See id.

Finding that there were more than ample grounds to reasonably suspect Chance was

engaged in a pattern of harassing Cundy, the court concludes that Chance cannot

maintain a section 1983 action based on a violation of the Fourth Amendment.

The Fourth Amendment protects against unreasonable seizures.  A seizure is not unreasonable, however, if it is merely an investigative detention supportable on the basis of the police officer's reasonable suspicion.  See United States v. Perea, 986 F.2d 633, 644 (2d Cir. 1993).  "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.  Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."  Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion).  To determine whether an encounter is merely an investigative stop as opposed to a full fledged arrest, the Second Circuit has enumerated several factors:

> the amount of force used by police, the need for such force, and the
> extent to which the individual's freedom of movement was restrained, . . .
> and in particular such factors as the number of agents involved . . . ;
> whether the target of the stop was suspected of being armed . . .; the
> duration of the stop . . .; and the physical treatment of the suspect . . .,
> including whether or not handcuffs were used.

Oliveira v. Mayer, 23 F.3d 642, 645 (2d Cir. 1994) (quoting Perea, 986 F.2d at 645).  If, indeed, consideration of these factors compels a finding that the encounter is merely an investigatory stop, it need only be "justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity" or "is wanted for past criminal conduct."  United States v. Cortez, 449 U.S. 411, 417 and n.4 (1981).  The standard has been articulated as "reasonable suspicion," and in making that determination a court must look at "totality of the circumstances."  United States v.

Arvizu, 534 U.S. 266, 273 (2002).

In the instant case, construing the undisputed facts in a light most favorable to Chance, any conceivable detention could only have begun when he arrived, voluntarily, at the police station and was escorted to an interview room. As an initial matter, the court notes that the voluntary nature of submitting to the interview suggests that it was less intrusive than a formal arrest. Moreover, the interview lasted only twenty minutes, during which time Detective Bravo was the only officer present. Detective Bravo questioned Chance as to any contact he had had with Cundy or his son in the previous three days. Having determined that he did not have any such contact, Chance was not charged with a crime and was allowed to leave the police station. The court finds that this encounter was not so intrusive as to rise to the level of a formal arrest and, rather, was merely, at most, an investigatory stop.

Having determined that the twenty minute interview was an investigative stop, the court now considers whether reasonable suspicion existed for such a stop. It is undisputed that the FPD was aware that, on February 4, 2003, Cundy filed a report with the FPD that Chance had come to his home. In light of a prior warning issued by the FPD that Chance not have any contact with the Cundy residence, there was reason to suspect that Chance had violated section 53a-107 of the Connecticut General Statutes. The additional investigation into Chance's record and background further suggested Chance had a violent history. Under these circumstances, after Chance voluntarily arrived at the police station, a twenty minute interview with a single officer inquiring about his contact with the Cundys appears eminently reasonable and the least intrusive

8

means reasonably available to dispel Detective Bravo's suspicion in a short period of time.

**C.      Conclusion**

For the foregoing reasons, the court grant's Detective Bravo's Motion for Summary Judgment [Dkt. No.125].  Additionally, noting that the only remaining claim in the case is one against the defendant Cundy for defamation under Connecticut state law, the court orders the plaintiff to show cause by September 21, 2004 why that claim should not be dismissed without prejudice for want of jurisdiction in light of 28 U.S.C. § 1367.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 7th day of September, 2004.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge